FILED
US DISTRICT COURT
EASTERN DISTRICT OF LA

2002 OCT 28 PM 3: 44

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONNIE CATCHINGS

CIVIL ACTION

VERSUS

NO. 01-2111

ST. TAMMANY ASSOCIATION
FOR RETARDED CITIZENS

SECTION "F" (2)

## ORDER AND REASONS

Plaintiff, Connie Catchings, brought this action against her former employer, the St. Tammany Association for Retarded Citizens ("STARC"). Plaintiff alleges that STARC discriminated against her on the basis of her race (African-American) by terminating her employment in violation of Title VII and Louisiana anti-discrimination law. Record Doc. No. 11, Amended Complaint; Record Doc. No. 18, Second Amended Complaint. This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 14.

DATE OF ENTRY
OCT 2 9 2002

STARC filed a motion for summary judgment. Record Doc. No. 24. Plaintiff filed a timely opposition memorandum. Record Doc. No. 26. Defendant received leave to file a reply memorandum. Record Doc. Nos. 28, 31.

Both parties attached exhibits that were not verified as required by Fed. R. Civ. P. 56(e). However, at the motion hearing conducted on October 9, 2002, counsel for both parties stipulated that there is no dispute as to the authenticity of any exhibit. Participating at the motion hearing were Jane Johnson of the Tulane Law Clinic and student attorney Susan S. Quist, representing plaintiff; and Michael T. Tusa, Jr., representing defendant.

Plaintiff initiated this action pro se with an application for appointment of attorney, to which she attached her charge of discrimination before the Equal Employment Opportunity Commission ("EEOC") and her right to sue letter. The Tulane Law Clinic filed an Amended Complaint after it was appointed to represent her. In her Second Amended Complaint, plaintiff moved to dismiss her state law breach of contract claim voluntarily. In her memorandum in opposition to STARC's summary judgment motion, Catchings stated her willingness to dismiss voluntarily her state law intentional infliction of emotional distress claim. During the motion hearing, plaintiff (through her counsel) agreed to dismiss her retaliation claim voluntarily.

2

I.   FACTUAL BACKGROUND

The following facts are accepted as undisputed solely for purposes of the pending motion for summary judgment.

STARC is a nonprofit corporation that provides a variety of services for developmentally disabled adults, including employment of those persons as "direct support workers." STARC hired Catchings in July 1999 for a substitute position on an as-needed basis. She was later promoted to the full-time job of Direct Support Worker Instructor.

As an instructor, plaintiff's job duties included supervising client groups of direct support workers and maintaining quality assurance in work contracts performed by these groups. The quality assurance aspect of the job included oversight of the client workers, who prepared packages of pre-rolled forks, knives and napkins to fulfill STARC's contracts with certain restaurants. The restaurants paid for the contracts by the package. As part of her job, Catchings was required to assure that the contract was performed exactly as specified, including ensuring that the proper number of pre-rolled packages was in each box sent to the restaurants.

Plaintiff had numerous disciplinary write-ups during her employment with STARC between July 1999 and September 2000. Her supervisor, Sherri Johnston, who is white, recommended that plaintiff's employment be terminated. However, STARC's Executive Director, Dianne Baham, decided not to terminate Catchings on those occasions.

3

Because of errors in the counts of flatware produced by STARC's client workers, O'Henry's restaurant cancelled its contract with STARC in January 2001. Johnston sent a memorandum to all of STARC's instructors on January 19, 2001, revealing the loss of the O'Henry's contract and explaining the importance of quality control, including accurate package counts. Defendant's Exh. 20, memorandum. Catchings received the memorandum. Defendant's Exh. 1, Catchings deposition at 59. The memorandum advised the instructors that Johnston and another supervisor, Elenora Crawford, would conduct spot checks of the package counts for the restaurant contracts and that any future errors could result in disciplinary actions. Defendant's Exh. 20.

STARC followed up its memorandum with a quality assurance meeting with all staff members on February 2, 2001. Defendant's Exh. 21, minutes of meeting. Plaintiff attended the meeting and recalled that the loss of the O'Henry's contract was discussed. Defendant's Exh. 1, Catchings deposition at 52-53. Baham conducted the meeting. She advised the staff that quality assurance remained a top priority and that, to ensure that no other restaurant contracts were lost in the future, supervisors would conduct spot checks often. Defendant's Exh. 21. After the loss of the O'Henry's contract, it is clear that Catchings was aware that instructors must ensure that the flatware count of each box was accurate. Defendant's Exh. 1, Catchings deposition at 54-56.

4

On February 5, 2001, Crawford conducted a spot check of boxes that had been supervised by Catchings and discovered count errors in two boxes. Defendant's Exh. 6, Crawford affidavit; Defendant's Exh. 22, disciplinary notice. Plaintiff testified that she personally counted one box that had an error in its count. Defendant's Exh. 1, Catchings deposition at 56-57, 66. As a result, Crawford (who is African-American) and Johnston recommended that STARC terminate Catchings's employment. Defendant's Exh. 6, Crawford affidavit; Defendant's Exh. 4, Johnston deposition at 37. Plaintiff was written up and her employment was terminated that day. Defendant's Exh. 22, disciplinary notice; Defendant's Exh. 28, termination notice. Catchings testified that she wrote on the disciplinary notice "I did count the boxes and they were short" and signed the notice. Defendant's Exh. 22, disciplinary notice; Defendant's Exh. 1, Catchings deposition at 72.

Although plaintiff admits that the count of one box was three packages short when she and Crawford counted it on February 5, 2001, she testified that she had counted the same box one week earlier, another employee had verified her count and the count at that time was accurate. She stated that she chose that particular box to be counted because she believed it had an accurate count. Id. at 57, 61-63. She speculated that an unknown person could have tampered with the box during the intervening week because the room where the filled boxes are kept is not locked. Id. at 62-63.

5

Two other instructors who had count errors were also written up and their employment terminated at the same time.  Both of those instructors were African-American.  Defendant's Exh. 4, Johnston deposition at 37; Defendant's Exh. 6, Crawford affidavit; Defendant's Exhs. 26, 27, termination notices of other employees.

STARC replaced Catchings with another African-American.  Defendant's Exh. 4, Johnston deposition at 37; Defendant's Exh. 6, Crawford affidavit.

## II.    ANALYSIS

### A.    Standard of Review for Summary Judgment Motions

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case.  Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

> When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

6

colorable, or is not significantly probative, summary judgment may be granted."

Thomas v. Barton Lodge II, Ltd., 174 F.3d 636, 644 (5th Cir. 1999) (citing Celotex, 477

U.S. at 322-23; quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome

of the action under governing law. Anderson, 477 U.S. at 248; Hamilton v. Segue

Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). An issue is "genuine" if the evidence

is sufficient for a rational trier of fact to return a verdict for the nonmoving party. Id.

To withstand a properly supported motion, the nonmoving party who bears the

burden of proof at trial must come forward with evidence to support the essential elements

of its claim. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712

(5th Cir. 1994) (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof

concerning an essential element of the nonmoving party's case renders all other facts

immaterial." Celotex, 477 U.S. at 323.

The court must consider all evidence in the light most favorable to the nonmoving

party. National Ass'n of Gov't Employees, 40 F.3d at 712-13. "Conclusory allegations

unsupported by specific facts, however, will not prevent the award of summary judgment;

'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant

probative evidence tending to support the complaint."'" Id. at 713 (quoting Anderson, 477

U.S. at 249).

"Factual controversies are construed in the light most favorable to the nonmovant,

but only if both parties have introduced evidence showing that an actual controversy

exists." Edwards, 148 F.3d at 432; accord Little v. Liquid Air Corp., 37 F.3d 1069, 1075

(5th Cir. 1994) (en banc). "We do not, however, in the absence of any proof, assume that

the nonmoving party could or would prove the necessary facts." Id. (emphasis in

original). "Moreover, the nonmoving party's burden is not affected by the type of case;

summary judgment is appropriate in any case where critical evidence is so weak or tenuous

on an essential fact that it could not support a judgment in favor of the nonmovant." Id.

(quotation omitted) (emphasis in original).

B.    Plaintiff Cannot Establish a Prima Facie Case

In an employment discrimination case under both Title VII and Louisiana law,[1]

plaintiff has the initial burden of proving a prima facie case of discrimination by a

preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973). To establish a prima facie case of discriminatory termination, plaintiff must prove

---

[1]"Courts have continually turned to federal employment discrimination law, including Title VII and the well-developed jurisprudence arising thereunder, for interpretation of Louisiana's anti-discrimination statute." Nichols v. Lewis Grocer, 138 F.3d 563, 566 (5th Cir. 1998) (citing Deloach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir. 1990); Plummer v. Marriott Corp., 654 So. 2d 843, 848 (La. App. 4th Cir. 1995)); accord Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989).

that (1) she was a member of a protected class, (2) she was qualified for the position, (3) her employment was terminated and (4) she was replaced by an individual of a different race or gender, or that defendant treated individuals of a different race or gender more favorably than it treated her. Sreeram v. Louisiana State Univ. Med. Ctr., 188 F.3d 314, 318 (5th Cir. 1999); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995); Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987); Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1179 (5th Cir. 1990); Martinez v. El Paso County, 710 F.2d 1102, 1104 (5th Cir. 1983).

First, it is undisputed that, following plaintiff's termination, she was replaced by another African-American. Second, plaintiff has produced no evidence of any kind that defendant treated individuals of a different race or gender more favorably than it treated her. Instead, she has proffered only speculation and conclusory allegations of disparate treatment. These kinds of allegations, as opposed to evidence, are wholly insufficient to create a triable issue of fact as to the fourth component of plaintiff's prima facie case, that she was replaced by an individual of a different race or gender, or that defendant treated individuals of a different race or gender more favorably than it treated her.

Summary judgment is therefore appropriate because Catchings has failed to submit any evidence to support one of the essential elements of the initial burden to establish a prima facie case imposed on her by law.

9

C.     Plaintiff Fails to Proffer Any Evidence of Pretext

Establishment of a prima facie case of discrimination is only the initial part of

plaintiff's burden.  If a prima facie case is present,

> the burden then shifts to the defendant to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection. . . .  [S]hould the
> defendant carry this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the legitimate reasons offered
> by the defendant were not its true reasons, but were a mere pretext for
> discrimination.

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quotation

and citation omitted) (emphasis added); accord Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 146-48 (2000); Nichols, 138 F.3d at 566.

Even if Catchings could meet her burden of establishing a prima facie case of

discrimination, which she cannot, STARC has articulated and submitted evidence sufficient

to establish that it had a legitimate, nondiscriminatory reason for firing her.  STARC had

recently lost a contract, which was important to STARC's mission of providing

employment for developmentally disabled adults, because of poor quality control.

Johnston and Baham had emphasized to the instructors, including Catchings, orally and in

writing the importance of accurate counts to avoid such losses, had instituted spot checks

to ensure that quality control was maintained and had warned that disciplinary action might

10

be taken if quality control was not adequate.  A spot check of work by Catchings and two other instructors revealed quality control errors by each, and all three were terminated.

Because defendant has met its burden to articulate a legitimate, nondiscriminatory reason for its action, the burden shifts to plaintiff to rebut that reason with evidence of discrimination.  She has failed to proffer any <u>evidence</u> that defendant's stated reason is false or that the real reason was intentional discrimination.  <u>Reeves</u>, 530 U.S. at 147.

The plaintiff in <u>Reeves</u> "made a substantial showing that respondent's explanation [for terminating him] was false," <u>id.</u> at 144, and not merely based on a mistake of fact, by demonstrating that plaintiff's alleged work errors either did not occur or were not his responsibility and that the employer knew that the errors could not have occurred or were not his errors, as it contended when it fired him.  Thus, a reasonable factfinder could infer from its "disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity)" that defendant's true reasons for terminating Reeves were discriminatory.  <u>Id.</u> at 144-46 (quotation and citation omitted).

In contrast, Catchings has not shown that STARC's proffered reason for terminating her is false.  "[She] simply provided insufficient evidence that [her] termination was due to anything other than [her] poor work performance.  Poor work performance is a legitimate, non-discriminatory reason for discharge."  <u>Perez v. Region 20 Educ. Serv.</u>

Ctr., No 01-50591, 2002 WL 31098027, at *4 (5th Cir. Sept. 20, 2002) (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999)).

Plaintiff argues that STARC's proffered reason for firing her was false based on her allegation that she had counted the boxes one week earlier and found an accurate count and her speculation that someone "could have" tampered with the box in the interval. Plaintiff's Exh. 2, Catchings deposition at 57, 62-63. This allegation is irrelevant, immaterial and insufficient to defeat summary judgment. When Crawford made her later spot check, she found an inaccurate count. Catchings admits that this later count revealed a shortage in the box that she counted in Crawford's presence. Crawford and Johnston made their termination recommendation based on that later count. Plaintiff presents no evidence that Johnston (the alleged discriminatory actor) either knew that the count in that box had been accurate a week earlier, tampered with the box in the interval or knew that anyone else had tampered with the box. Catchings herself chose the box to be counted in the spot check. There is no evidence here, as there was in Reeves, to contradict STARC's proffered reasons for firing her.

The different timing of the two counts and the admitted shortage in the box that was counted by Catchings and Crawford undermines plaintiff's falsity argument and renders her allegation insufficient to create a triable fact issue as to the alleged falsity of defendant's reason. "'The question is not whether an employer made an erroneous

decision; it is whether the decision was made with discriminatory motive.'" Perez, 2002 WL 31098027, at *4 (quoting Mayberry, 55 F.3d at 1091). Thus, it is irrelevant whether STARC's decision to fire plaintiff may have been based on incorrect facts, so long as its decision was not motivated by discriminatory animus. Scales v. Slater, 181 F.3d 703, 711 (5th Cir. 1999); Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir. 1993). Plaintiff continues to bear "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against" her and may carry that burden only by showing "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination." Reeves, 530 U.S. at 143 (quotations and citations omitted).

Plaintiff's mere subjective belief that she has been the subject of discrimination, unsupported by any specific factual evidence, and her assertion that the reason proffered by defendant is false because her own count a week earlier differed from defendant's count a week later, cannot be the basis of judicial relief and are insufficient to rebut the employer's evidence of legitimate, nondiscriminatory reasons for its actions. Vance v. Union Planters Corp., 209 F.3d 438, 444 (5th Cir. 2000); Lawrence v. University of Tex., 163 F.3d 309, 313 (5th Cir. 1999); Ross v. University of Tex., 139 F.3d 521, 526 (5th Cir. 1998); Nichols, 138 F.3d at 566; Little v. Republic Ref. Co., 924 F.2d 93, 96 (5th Cir. 1991).

13

Catchings has proffered only unsupported speculation and conclusory allegations that her termination was based on race rather than on her poor work performance. Nothing in her affidavit filed with the EEOC, or in her testimony, supports her subjective allegations that "I believe that I was discharged" and "I believe that I was set up . . . because of [my] race." Plaintiff's Exh. 1, charge of discrimination. She has not provided the court with any other evidence. Thus, plaintiff has failed to carry her burden to come forward with probative evidence of intentional discrimination.

It certainly is <u>not</u> defendant's burden to show that white employees were terminated for erroneous counts, as plaintiff suggests in her memorandum. Rather, it is <u>plaintiff's</u> burden to show that white employees made the same errors but that defendant treated them more leniently than they treated her. She has produced no such <u>evidence</u>.

A mere list of witnesses who allegedly have information concerning plaintiff's claim is not evidence and is insufficient to support a request for a continuance under Fed. R. Civ. P. 56(f). The other alleged fact disputes raised in her memorandum and her subjective belief that Johnson discriminated against her in other disciplinary write-ups before she was fired do not establish any material fact disputes.

Accordingly, STARC is entitled to summary judgment in its favor as a matter of law on plaintiff's federal and state law claims of racial discrimination.

14

D.    Plaintiff's Remaining State Law Claims

Catchings asserted three additional claims under state law in her Amended Complaint: for breach of contract, intentional infliction of emotional distress and retaliation.  In her Second Amended Complaint, plaintiff moved to dismiss her breach of contract claim voluntarily.  In her memorandum in opposition to STARC's summary judgment motion, Catchings stated her willingness to dismiss voluntarily her intentional infliction of emotional distress claim.  During the motion hearing, she agreed to dismiss her retaliation claim voluntarily.  Even if plaintiff were not willing to dismiss these claims, the court would decline to exercise its supplemental jurisdiction.

Although a plaintiff may bring state law claims in a federal action pursuant to the court's supplemental jurisdiction, 28 U.S.C. § 1367(a), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).

Although the Fifth Circuit's

> "general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute. Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Id. (quotations and citations omitted).  The district court must make its decision "in light of the specific circumstances of the case at bar."  Id. (quotation and citation omitted).

In the instant case, plaintiff's federal claims have been dismissed on the merits.  The factors of judicial economy, convenience, fairness and comity in this case weigh in favor of declining supplemental jurisdiction.  First, as noted, plaintiff has indicated her willingness to dismiss her state law claims voluntarily.  Second, comity favors dismissing the claims and letting the state court handle them (if plaintiff decides to pursue them) because of Louisiana's interest in adjudicating the claims of its citizens brought under its laws.  Third, because the claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in favor of maintaining jurisdiction.  Finally, fairness and convenience are equal whether the claims are brought in state or federal court.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendant's motion for summary judgment is GRANTED and that plaintiff's discrimination claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that plaintiff's state law claims of breach of contract, intentional infliction of emotional distress and retaliation are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this _28th_ day of October, 2002.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

17